IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DEENA C. KINGERY,

      Plaintiff,

v.                                  CASE NO. 1:15-cv-126-MP-GRJ

CAROLYN W COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for supplemental disability insurance benefits pursuant to Title

XVI of the Social Security Act (the Act). (ECF No. 1.) The Commissioner

has answered, (ECF No. 9), and both parties have filed briefs outlining

their respective positions. (ECF Nos. 16, 19.)  For the reasons discussed

below, the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for Title XVI Supplemental Security

Income ("SSI") Benefits on January 11, 2012, alleging disability beginning

April 15, 2011. Plaintiff claims she cannot work because she is bi-polar manic depressive, chronically depressed, and suffers from a degenerative back, spinal stenosis, anxiety/panic disorder, and osteoarthritic right hip bones. (R. 153–64.) Plaintiff's claim was denied initially and upon reconsideration. Plaintiff attended an administrative hearing before Administrative Law Judge ("ALJ") Thomas J. Gaye on December 4, 2013. (R. 37–55.) The ALJ issued a written decision on January 17, 2014, finding the Plaintiff not disabled.  (R. 23–31.) On April 24, 2015, the Appeals Council denied Plaintiff's request for review. (R. 1-6.) Plaintiff subsequently appealed the ALJ's decision to this Court.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2000). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971));

*accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the reviewer would have

reached a contrary result as finder of fact, and even if the reviewer finds

that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358

(11th Cir. 1991). The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the

decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835,

837 (11th Cir. 1992) (holding that the court must scrutinize the entire

record to determine reasonableness of factual findings); *Parker v. Bowen,*

793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider

evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on

plenary review if the decision applies incorrect law, or if the decision fails to

provide the district court with sufficient reasoning to determine that the

Commissioner properly applied the law. *Keeton v. Dep't Health & Human

Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful

activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005).[1] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. § 416.920(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.§ 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. § 416.920(d). Fourth, if a claimant's impairments do not prevent

---

[1] All further references to 20 C.F.R. will be to the 2005 version, unless otherwise specified.

him from doing past relevant work, he is not disabled. § 416.920(e). Fifth, if

a claimant's impairments (considering his residual functional capacity

("RFC"), age, education, and past work) prevent him from doing other work

that exists in the national economy, then he is disabled. § 416.920(f)–(g).

The burden of proof regarding the plaintiff's inability to perform past

relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996,

1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278

(11th Cir. 2001).

## III.  SUMMARY OF THE RECORD

### A.    Medical Records

Plaintiff completed a clinical interview with Richard E. Sexton, Ph.D,

in October 2007. Dr. Sexton's evaluation was rather unremarkable other

than Plaintiff's depressive thinking and anxiousness. Plaintiff reported

washing, dressing, and attending to her own personal hygiene needs. She

stated that she can cook, clean, do laundry, and go grocery shopping.

During a typical day she said she watches television, uses the computer,

and visits neighbors. Dr. Sexton suggested that Plaintiff has mood disorder

and assigned her a Global Assessment of Functioning ("GAF") score of 55

to 59.[2]  Dr. Sexton opined, however, that Plaintiff is capable of performing

simple, repetitive-type tasks and can understand, recall, and carry out

simple instructions. (R. 214–19.)

In December 2007, Drew Apgar, J.D., D.O., F.C.L.M., assessed

Plaintiff with chronic pain syndrome of the lumbar spine, chronic tobacco

use, hypertension, anxiety with agoraphobia, depression, and history of

substance abuse/marijuana. Dr. Apgar, however, found no significant

physical exertional limitations. Plaintiff had 5/5 muscle strength in all

extremities, intact grasp, and intact fine coordination, pinch, and

manipulation. Dr. Apgar opined that Plaintiff's mental status was essentially

normal and that  Plaintiff's understanding, memory, concentration, and

focus were intact. (R. 220–38.)

Plaintiff had an x-ray taken of her lumbar spine in September 2008.

There was no evidence of an acute fracture or dislocation. The alignment

was satisfactory and the vertebral bodies, lamina and posterior elements

were intact. The x-ray did reveal, however, osteoarthritic changes with

small anteriorly projecting osteophytes, as well as disc space narrowing

---

[2] GAF scores are routinely used by "mental health physicians and doctors . . . to rate the occupational, psychological, and social functioning of adults." *McCloud v. Barnhart*, 166 F. App'x 410, 413 n.2 (11th Cir. 2006) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision, 4th ed. 2000))

and endplate sclerosis at the L5-S1 level. (R. 257.)

In May 2011, Plaintiff visited Family Medical and Dental Center ("FMDC"), during which time she requested a refill of Cymbalta, stating that it helps her depression. She also requested a methadone prescription, which the Center denied, informing Plaintiff she would need to go to a methadone clinic. (R. 317.)

Then in April 2011, Plaintiff presented to the emergency room at Shands Hospital at the University of Florida for an attempted overdose. Plaintiff was subsequently Baker Acted. (R. 260–70.) During her intake psychiatric evaluation, Plaintiff reported manageable depression, spinal stenosis, chronic back pain, and hypertension. Plaintiff denied any current depression and described her mood as "I'm sad, not hysterical, just sad," and "I'm lonely." (R. 285–296.)

Plaintiff went to Gainesville Psychiatry and Forensic Services ("GPFS") in February 2012 to get off methadone. GPFS prescribed Plaintiff Suboxone. During two subsequent visits in February 2012, Plaintiff reported that she did not feel anxious at all. (R. 303–07.)

Plaintiff then underwent a consultative examination by Eftim Adhami, MD, MS, in March 2012.  At that time, Plaintiff reported lower back pain,

which prevents her from standing for more than ten minutes. Dr. Adhami's evaluation was, however, remarkably benign. Plaintiff's neurological findings were normal. Plaintiff had 5/5 muscle strength in all muscles, no muscle atrophy, and a normal gait. Plaintiff was also able to pick up small objects and button clothes. Dr. Adhami observed normal judgment and expression and although Plaintiff was slightly manic, Plaintiff understood questions and answers. (R. 301–02.)

On March 22, 2012, William E. Beaty, Ph.D., evaluated Plaintiff. Plaintiff reported suffering from depression and anxiety. Plaintiff stated that she tries to do chores, including dishes, but that she cannot stand for more than five minutes. Plaintiff said she could not sweep but can vacuum for a very short time. She can, however, wipe counters and scrub toilets. During the day she watches television, talks on the telephone with her girlfriend in Ohio, goes to her mother's workplace weekly to "keep everyone company," and occasionally cooks breakfast or lunch. Plaintiff reported keeping in touch with people over Facebook. (R. 309–13.)

Dr. Beaty's mental status evaluation revealed generally intact thought processes except for jumping around and requiring steering. Dr. Beaty found no evidence of delusions, paranoia, attention impairment, memory

impairment, or hallucinations.  He noted, however, that Plaintiff's mood was depressed and anxious. Dr. Beaty's assessment included bipolar disorder, post traumatic stress disorder, panic disorder, cannabis abuse, hallucinogen abuse, nicotine dependence, and opioid abuse. (*Id.*)

Following her evaluation with Dr. Beaty, Plaintiff returned to GPFS for nine follow-up visits from March 2012 through November 2012. During each visit Plaintiff reported that she was not at all anxious. (R. 320–28.) On August 22, 2012, Plaintiff also reported that her disability had been denied and that she subsequently went on vacation. (R. 323.)

Plaintiff returned to FMDC in April 2012, reporting bilateral leg and back pain. She requested a refill of Cymbalta and something to help her sleep. The attending practitioner noted that Plaintiff appeared intoxicated. The practitioner discussed with Plaintiff that no controlled substances would be prescribed by FMDC. The practitioner, however, refilled Plaintiff's Cymbalta and prescribed Hydroxytine for insomnia. Several days later, Plaintiff returned, reporting right hand pain, bloating, and heartburn. Plaintiff stated that her feet, however, were improving with medication. Accordingly, the practitioner refilled Plaintiff's Neurontin prescription. (R. 315–17.)

**B.    Hearing Testimony**

Plaintiff, a 51 year old female, lives with her mother and stepfather. (R. 41.) She is 5'7" and weighs over 200 pounds. (R. 41–42.) After graduating from high school Plaintiff went to vocational school for police work. (R. 42.) Plaintiff, however, has not worked at all for the past thirty years because she cannot focus. (R. 42–43, 45.) She also has difficulty remembering things. (R. 48, 52.) Plaintiff testified that she has Attention Deficit Disorder and Attention Deficit Hyperactivity Disorder, but has never been prescribed medication for either condition. (R. 43.)

During the day, Plaintiff plays with her dogs and watches television. (R. 49.) She does not go outside because she does not fit in. (*Id.*)  She spends time with her mother and does not have any friends. (R. 51.) Although Plaintiff has a driver's license, she does not drive because she gets scared and feels like everything is closing in around her. (R. 50.) She also does not like to sleep because she is afraid of dying and has bad dreams involving snakes and being on other planets with aliens. (R. 50–51.)

Plaintiff used to have a drug problem, particularly with amphetamines, which helped her focus. (R. 43–44.) Now, however, she goes to inpatient treatment and has not used drugs for approximately three

years. (R. 43.) Although Plaintiff takes Suboxone for her opiate addition,

she does not take any pain medication. (R. 45.) She also takes blood

pressure medication and Cymbalta for anxiety and depression, which helps

sometimes. (R. 46.) Plaintiff also takes Gabapentin for nerve damage from

spinal stenosis. (*Id.*) She says she has a hard time feeling her hands and

that they have sharp burning pains that cause her feet to jerk.  (*Id.*) The

Gabapentin, however, helps with the burning and jabbing pains. (*Id.*)

## C.    Findings of the ALJ

The ALJ found that Plaintiff has the following severe impairments: (1)

affective disorder with anxiety and depression, only minimally treated; and

(2) back pain with mild degenerative disc disease in combination with

obesity and smoking. (R. 25.) The ALJ did not find that the impairments

met the severity of one of the listed impairments. (R. 27.) The ALJ found

that Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely credible for the reasons explained in this

decision." (R. 30.)  The ALJ then determined that Plaintiff "has the residual

functional capacity ["RFC"] to perform medium work as defined in 20 CFR

416.967(c) except she can only occasionally climb ladders, ropes, and scaffolding. The ALJ further restricted claimant to simple repetitive tasks with not more than occasional public contact.  (R. 28.) Although Plaintiff has no past relevant work, based upon the RFC, Plaintiff's age, education, and work experience, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including kitchen helper, laundry worker, and cook helper. (R. 30–31.)

## IV.  DISCUSSION

On appeal, Plaintiff's sole argument is that the ALJ rejected Plaintiff's testimony of pain and other symptoms without explicitly making a credibility finding.

A claimant may establish her disability through her own testimony of pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1560–61 (11th Cir.1995). The ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard." *Foote*, 67 F.3d at 1560. Under that test, evidence of an underlying medical condition must exist. *Id.* If that threshold is met, then there must be either objective medical evidence that confirms the severity

of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms. *Id.* A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Id.* at 1561.

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 416.929(c). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors. § 416.929(c)(1)–(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's functional

limitations and restrictions due to her pain or symptoms. § 416.929(c)(3).

The ALJ then examines the claimant's statements regarding her symptoms

in relation to all other evidence, and consider whether there are any

inconsistencies or conflicts between those statements and the record. §

416.929(c)(4).

If the ALJ decides to discredit the claimant's testimony as to her

subjective symptoms, the ALJ must articulate explicit and adequate

reasons for doing so or the record must be obvious as to the credibility

finding. *Foote*, 67 F.3d at 1561–62. While the ALJ does not have to cite

particular phrases or formulations, broad findings that a claimant was not

credible and could work are, alone, insufficient for the Court to conclude

that the ALJ considered the claimant's medical condition as a whole. *Id.* at

1562.

The ALJ's articulated reasons must also be supported by substantial

evidence. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532

(11th Cir. 1991). The Court will not disturb a properly articulated credibility

finding that is supported by substantial evidence. *Foote*, 67 F.3d at 1562.

The failure to articulate reasons for discrediting a claimant's subjective

testimony, however, requires that the testimony be accepted as true and

becomes grounds for remand where credibility is critical to the outcome of

the case. *Id.*

In this case the ALJ determined that Plaintiff has medically-determinable impairments that could reasonably be expected to produce her symptoms. Accordingly, the ALJ evaluated the intensity and persistence of Plaintiff's symptoms in determining how they limit her capacity for work. *See* § 416.929(c). The ALJ concluded, however, that Plaintiff's statements were not entirely credible, stating:

> Therefore, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely credible for the reasons explained in this decision.

(R. 30.)

Although Plaintiff contends that the ALJ premised his credibility finding solely on the fact that Plaintiff previously applied for SSI benefits and on the fact that Plaintiff has no significant work history, the ALJ did not limit his evaluation of Plaintiff's pain to those two factors only. Rather, in addition to these reasons, the ALJ articulated a multitude of other reasons supported in the record for discrediting Plaintiff's testimony. These reasons include the following.

First, the ALJ expressly discussed and relied upon the objective medical evidence to support his credibility determination. *See* § 416.929(c)(2). For example, the ALJ emphasized how none of Plaintiff's treating physicians or clinicians submitted RFC assessment forms in support of Plaintiff's claim. (R. 28–29.) With respect to Plaintiff's alleged osteoarthritis of her hip, the ALJ correctly pointed out that "the record supplies no objective or clinical support of severity such as positive X-ray findings." (R. 29.)

Similarly, with regard to Plaintiff's alleged degenerative back and spinal stenosis, although the September 2008 X-ray revealed osteoarthritic changes with small anteriorly projecting osteophytes, disc space narrowing, and endplate sclerosis at the L5-S1 level, the ALJ pointed out that the condition was "so mild in pathology apparently that it has not warranted a new X-ray since September 2008." (R. 29, 257.)  Further, although Plaintiff claims she no longer has any fine motor skills in her hands due to spinal stenosis, the ALJ noted that "[o]n January 17, 2012 C.E., Dr. Adhami had observed the claimant to be fully able to pick up small objects and button clothing, as well as to walk normally." (R. 29, 302.)

In considering Plaintiff's complaints that she can only "minimally" sit, stand, or walk, the ALJ emphasized how examinations repeatedly found Plaintiff to be fully neurologically intact, with 5/5 motor strength in all extremities, no atrophy, and a normal gait. (R. 29, 230–31, 301–02.) Further, the ALJ pointed out that "although Plaintiff claims she has foot numbness and jabbing pain, the only reference to foot numbness, which she insists causes 'jabbing pain all the time, even with medications,' was that on April 19, 2012, her feet were 'improving' with medications." (R. 29, 315.)

Concerning Plaintiff's mental impairments and symptoms, the ALJ explained that Plaintiff's mental health treatment primarily included only modestly scheduled psychiatric appointments.  Notably, the medical notes from those appoints evidence that Plaintiff  denied that she felt anxious and evidence that Plaintiff did not request to change medications or dosages. (R. 29, 320–28.) Plaintiff also admits that her medications help sometimes. (R. 29, 46.) The ALJ further emphasized that Plaintiff's "mental status evaluations evidence intact concentration, thought processes, thought content, and memory." (R. 29, 312.)

The ALJ also expressly discussed and relied upon other evidence to

support his credibility determination. *See* § 416.929(c)(3). In considering

Plaintiff's prior work history, the ALJ correctly noted that Plaintiff has no

work history in the past 30 years. (R. 29.) Sporadic work history and

earnings prior to the alleged disability onset date can raise a question as to

whether a claimant's unemployment is actually due to pain. *See, e.g.*,

*Phillips v. Astrue*, Case No. 606-104, 2008 WL 2156717, at *9 (S.D. Ga.

May 22, 2008) (plaintiff's poor earnings record, which showed poor

motivation to work, undermined her allegations). The ALJ elaborated on

Plaintiff's lack of work history, stating, "[t]his is somewhat puzzling, since

the record indicates that she completed high school without any special

education assistance." (R. 29.)

  In terms of daily activities, the ALJ pointed out that although Plaintiff

claimed she "doesn't really go outside," Plaintiff nonetheless manages to

visit her mother's work and was able to go on vacation. (R. 29–30, 311,

323.) Similarly, while Plaintiff allegedly does not have any friends, Plaintiff

"reported to Dr. Beaty that she talked on the phone with her girlfriend and

also kept in touch with others on [Facebook]." (R. 30, 311.)

  Finally, although Plaintiff asserted she does not like to sleep because

she has dreams about snakes, and does not have any friends because no

one wants to hear her dreams of alien planets, the ALJ correctly acknowledged that these complaints were never made to her psychiatrist or a sleep disorder specialist. (R. 30.)

In sum, the ALJ articulated a multitude of reasons for discrediting Plaintiff's testimony regarding the intensity, persistence and limiting effect of her symptoms. The reasons detailed by the ALJ are supported by the substantial evidence of record and clearly detail why the ALJ discredited Plaintiff's testimony.  Accordingly, the Commissioner's decision should be affirmed.

## V.  RECOMMENDATION

In light of the foregoing it is **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED** and the Clerk should be directed to enter final judgment and close the file.

**DONE AND ORDERED** this 13th day of July, 2016.

_s / Gary R. Jones_
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the</u>**

**court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**